IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE HENRY DIXON,<br><br>            Petitioner,<br><br>   vs.<br><br>JAMES A. YATES,<br><br>            Respondent. | Case No. 2:09-cv-00513-JKS<br><br>MEMORANDUM DECISION |

Petitioner, Clarence Dixon, a state petitioner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Brown is currently in the custody of the California Department of Corrections, incarcerated at the Folsom State Prison in Represa, California.  Respondent has filed an answer, and Dixon has filed a traverse.

STATEMENT OF THE FACTS

   Police responded to a call of a residential burglary in progress at a duplex. Finding a broken window and a bent screen on the ground beneath it, officers entered the duplex. Once inside, they discovered a large hole (approximately three feet high and 15 inches wide) in a common wall between the duplexes. They announced their presence, received no answer and climbed through to the other side of the duplex.  The room was in disarray, with several items including a computer and a toy rifle piled on the bed. The door to a nearby bathroom was closed and locked. They again announced their presence, but received no response. When officers kicked the door in, defendant, who was sitting on the commode with his pants down, said "I give up." He had sheetrock dust on his hands and clothing.[1]

---

[1] This statement of facts is taken from the reasoned opinion of the California Court of Appeal, Third Appellate District.  These facts are presumed correct unless Dixon demonstrates that the determination of these facts was unreasonable, 28 U.S.C. § 2254(d)(2).

1

BACKGROUND/PROCEDURAL HISTORY

On August 25, 2006, Dixon was convicted by a jury of two counts of residential burglary and sentenced to a prison term of 15 years, 8 months.

Dixon appealed his sentence to the California Court of Appeal, which affirmed his sentence and the judgment in a reasoned, unpublished decision.[2] Dixon then filed a petition for review with the California Supreme Court, which was denied in March 2008.[3]

In December 2006 Dixon filed a petition for habeas corpus in the San Joaquin County Superior Court which was denied in February 2007.[4] In January 2007 he filed a petition for habeas corpus in the California Court of Appeal, which was denied two days later.[5] Over the next year and a half Dixon filed three additional petitions for habeas corpus in the San Joaquin County Superior Court, all of which were denied.[6]

In February 2009 Dixon filed the present petition in this Court, raising one ground for relief: the trial court violated his Sixth Amendment right to counsel by failing to conduct a proper *Marsden* hearing.[7] Respondent acknowledges that Dixon's ground has been properly exhausted and does not raise a procedural bar.

STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

---

[2] Lodged Doc. 4.

[3] Lodged Docs. 5, 6.

[4] Lodged Docs. 7, 8.

[5] Lodged Docs. 9, 10.

[6] Lodged Docs. 11-16.

[7] The term "*Marsden* motion" comes from *People v. Marsden*, 465 P.2d 44, 47-48 (1970), a California Supreme Court case which held that, as part of a criminal defendant's right to effective assistance of counsel under the Sixth Amendment, a trial judge must permit a defendant requesting substitute counsel the opportunity to present his reasons for the request.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[9] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[10] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[11] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[12] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[13] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

---

[8] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[9] *Williams*, 529 U.S. at 412.

[10] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[11] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[12] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[13] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

3

the trial with unfairness as to make the resulting conviction a denial of due process.'"[14] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[15] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[16]

In applying this standard, this Court reviews the last reasoned decision by the state court.[17] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[18] This presumption applies to state trial courts and appellate courts alike.[19]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[20] The scope of this review is for clear error of the state court ruling on the petition:

---

[14] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[15] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[16] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[17] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[18] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[19] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[20] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. Only by that examination may we determine whether the state court's decision was objectively reasonable.[21]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[22]

## DISCUSSION

Dixon alleges that the trial court violated his Sixth Amendment right to counsel by failing to conduct a *Marsden* hearing after he motioned for a new trial based on ineffective assistance of counsel. On three separate occasions before and during his trial, Dixon complained about his attorney's performance and sought new counsel. On each of these occasions the court conducted a *Marsden* hearing to evaluate counsel's performance and denied each of Dixon's requests. After the jury found Dixon guilty, but before he was sentenced, Dixon submitted a handwritten letter to the court titled "motion for a [mistrial] on the grounds [misrepresentation]]." The court treated his letter as a motion for a new trial, discussed the merits of the motion with Dixon and subsequently denied it, holding that the issues raised would be properly addressed in an appeal. Dixon claims that his motion for a new trial implicitly included a request that he receive a new attorney during sentencing and the trial court should have intuited this and held a *Marsden* hearing.

Dixon raised this issue on direct appeal, and the California Court of Appeal rejected his claim:

> When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. (*People v. Marsden* (1970) 2 Cal.3d 118, 124.) "'Although no formal motion is necessary, there must be "at least some clear indication by defendant that he wants a substitute attorney."'" (*People v. Mendoza*

---

[21] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[22] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

5

(2000) 24 Cal.4th 130, 157[], quoting *People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8[.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 97.)

Here, defendant made no such request, either in his written motion or orally to the court. Relying on *People v. Fosselman*, (1983) 33 Cal.3d 572, 582 (*Fosselman*), and *People v. Smith* (1993) 6 Cal.4th 684, 690 (*Smith*), he argues that a motion for a new trial based on ineffective assistance of counsel triggers the trial court's duty to conduct a *Marsden* hearing. Not so. In *Fosselman*, the trial court declined to rule on the merits of defendant's motion for a new trial because it believed it did not have the authority to order a new trial on the ground of inadequate representation of counsel. (*Fosselman*, *supra*, at p. 582.) The Court of Appeal reversed, holding that the trial court did have authority to determine the effectiveness of counsel for purposes of the new trial motion and should have done so. (*Id.* at pp. 582-583.) It did not, however, hold that the trial court was required to conduct a *Marsden* hearing to accomplish that goal, particularly in light of the fact that defendant made no request to substitute counsel, only a request for a new trial.

Defendant's reliance on *Smith* is similarly misplaced. In *Smith*, this state's highest court held only that "the standard expressed in *Marsden* and its progeny applies equally preconviction and postconviction." (*Smith*, *supra*, 6 Cal.4th at p. 694.) That holding did not require that the trial court conduct a *Marsden* hearing in the absence of a request for substitute counsel.

Here, defendant submitted his letter to the court following entry of guilty verdicts against him. The letter stated that defendant was making a "motion for a [mistrial] . . ." and the court treated it as such. The letter set forth defendant's complaints regarding the inadequacy of his representation at trial; it did not request new counsel to assist in making the motion for mistrial or provide representation at sentencing or for any other purpose going forward. The letter makes no mention of defendant's desire to obtain substitute counsel, nor did defendant make any such desire known during his colloquy with the court. While the law does not require that defendant use the word "Marsden" to request substitute counsel, we will not find error on the part of the trial court for failure to conduct a *Marsden* hearing in the absence of evidence that he made his desire for appointment of new counsel known to the court. (*People v. Dickey* (2005) 35 Cal.4th 884, 920-921.)

Furthermore, it is clear from the record that defendant was familiar with the procedure by which to invoke his right to substitute counsel, having done so on three prior occasions, each of which resulted in a *Marsden* hearing. Indeed, defendant's most recent request for new counsel was made on the eve of trial before the same judge who presided over the trial and considered defendant's subsequent motion for new trial. Defendant had certainly demonstrated in the past that he was capable of requesting new counsel and invoking his right to a *Marsden* hearing; he did not do so here.

Contrary to defendant's claim, a motion for new trial based on ineffective assistance of counsel alone does not trigger the court's duty to conduct a *Marsden* hearing where the defendant has not made clear his desire for substitute counsel. We find no error by the trial court for failure to conduct a *Marsden* hearing.[23]

As noted above, the mandate that a trial court conduct a *Marsden* hearing upon a defendant's request to substitute counsel is a result of California state-law, not federal law. Nevertheless, a state trial court's summary denial of a defendant's motion for new counsel,

---

[23] Lodged Doc. 4, pp. 4-6.

6

without further inquiry, can violate the defendant's Sixth Amendment right to counsel,[24] which is made obligatory on the states by the due process clause of the Fourteenth Amendment.[25] Thus, "[g]iven the commands of Sixth Amendment jurisprudence, a state trial court has no discretion to ignore an indigent defendant's timely motion to relieve an appointed attorney."[26]

As a threshold matter, this Court must determine whether Dixon's *pro-se* "motion for a [mistrial] on the grounds [misrepresentation]]" triggered the trial-court's duty to inquire into Dixon's relationship with his counsel to determine whether it was necessary to appoint new counsel for the remainder of the proceedings.[27] If this Court determines that the letter did, in fact, trigger the trial-court's duty to inquire into the relationship, the next inquiry should be whether the trial-court's hearing on plaintiff's motion satisfied this duty.[28] Finally, should this court determine that the trial court's inquiry into defendant's relationship with counsel was inadequate, it will have to determine (1) the nature and extent of the conflict between Dixon and his attorney, and (2) whether that conflict deprived Dixon of the representation to which he was

---

[24] *See Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982) (noting that the Sixth Amendment's requirement that the trial court inquire into a defendant's request for new counsel substantially parallels the California rule articulated in *Marsden*); *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc).

[25] *Faretta v. California*, 422 U.S. 806 (1975); *Anders v. State of Cal.*, 386 U.S. 738 (1967).

[26] *Schell*, 218 F.3d at 1025.

[27] *Wood v. Georgia*, 450 U.S. 261, 262 (1981) ("The possibility of a conflict of interest was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further."); *see also United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996) (When a defendant's motion for a new trial was based on ineffective assistance of trial counsel, and the court ordered an evidentiary hearing on the matter, requiring counsel to argue his own ineffective performance created an actual conflict and the court should have replaced him with new counsel.)

[28] *Schell*, 218 F.3d at 1024 (In considering whether the trial court abused its discretion in denying defendant's Marsden motion, the court must consider, *inter alia*, the adequacy of the court's inquiry into the defendant's complaint).

entitled by the Sixth Amendment.[29] In the event that this Court determines that a serious conflict did exist that resulted in the constructive denial of assistance of counsel, no further showing of prejudice is required; and Dixon's sentencing hearing shall be presumed to have been unfair.[30] If the serious conflict did not rise to the level of a constructive denial of counsel, however, Dixon must prove he was prejudiced by the conflict. Should this Court lack the evidence to make a determination, it must order an evidentiary hearing to determine whether Dixon's relationship with his counsel had deteriorated such that he was either entitled to a new sentencing hearing or whether the trial court should have been on notice that Dixon should have received a new attorney for the remainder of the proceedings.[31]

    Dixon's *pro-se* "motion for a [mistrial] on the grounds [misrepresentation]]," standing alone was not sufficiently specific enough to alert the court to a potential dispute between Dixon and his attorney.[32] However, at the hearing on this motion the judge noted that Dixon was also alleging that his attorney made "manipulated and threatening remarks" toward him.[33] If Dixon's attorney actually did make improper, threatening remarks toward Dixon, then Dixon would be entitled to a new attorney because a conflict of this nature would more likely than not represent a constructive denial of counsel.[34] This potential conflict was also apparent enough to prompt the

---

[29] *Id.* at 1027-28.

[30] *Id.* (citing *Strickland*, 466 U.S. at 692).

[31] *Id.*

[32] *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002) ("*If a defendant makes sufficiently specific, factually based allegations in support of his request for new counsel*, the district court must conduct a hearing into his complaint.") (emphasis added).

[33] Reporter's Transcript on Appeal, Vol. I, p. 144.

[34] *United States v. Williams,* 594 F.2d 1258, 1260 (9th Cir. 1979) (in a direct appeal case, holding an "irreconcilable conflict" existed in an attorney-client relationship described as "a stormy one with quarrels, bad language, threats, and counter-threats.") (en banc); *see, e.g.*, *United States v. Moore*, 159 F.3d 1154, 1159 (9th Cir.1998) (in a direct appeal case, holding an "irreconcilable conflict" existed where counsel failed to communicate important information to the defendant, failed to investigate the case or prepare for trial, and where the defendant

trial court to inquire; when the court began to discuss the alleged threats by counsel, the prosecutor said, "And if this is approaching Marsden or attorney-client stuff, I would want to make sure I'm not here."[35] The trial court responded, "Right, Right," and Dixon said, "Yes. Um–." Although Dixon's complaint was sufficient to prompt the trial court to inquire into the nature of the "threats" made by Dixon's counsel, the court declined to address the issue. The court simply concluded that the issue was "probably best [addressed] in appellate form," and that it did not present a new trial situation.[36]

Given the trial court's cursory treatment of this issue and the fact that such threats would likely have constituted a violation of Dixon's right to counsel, this Court must now consider whether to order an evidentiary hearing to investigate the existence and nature of the threats allegedly made by counsel. The Supreme Court has held that in determining whether an evidentiary hearing is required in a habeas proceeding:

> The appropriate standard . . . is this: Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.[37]

Even if the requirements of *Townsend* are satisfied, AEDPA places severe restrictions on holding evidentiary hearings in federal habeas proceedings:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

---

threatened to sue counsel for malpractice and the defendant felt physically threatened by counsel).

[35] Reporter's Transcript on Appeal, Vol. I, p. 144.

[36] Reporter's Transcript on Appeal, Vol. I, p. 144.

[37] *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963), *overruled on other grounds Keeny v. Tamayo-Keyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 22 U.S.C. 2254(e)(2) (1996).

>	(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>	(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.[38]

In this case, Dixon has failed to develop a factual basis for his claim to this court. Aside from making a vague and conclusory allegation that his attorney made "threatening remarks" to him, Dixon has not provided any sort of insight into the alleged threats. He has not described the threats themselves, the context in which they occurred, nor has he provided any sort of documentation which, if believed by this Court, would allow this Court to find that his attorney actually did make threatening remarks to him. Dixon has also failed to provide any reason for failing to develop the factual record concerning these alleged threats. Dixon simply concludes that he is entitled to relief solely on the basis that the trial court failed to hold a *Marsden* hearing. However, as noted in *Schell*, a trial court's failure to conduct a *Marsden* hearing is not a *per se* constitutional violation.[39]

In a federal habeas proceeding, a petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[40] In his original Petition Dixon failed to meet this burden; however, in order to give Dixon the benefit of the doubt, this Court entered an order at Docket No. 36 directing Dixon to submit an affidavit detailing precisely what he contends the dispute with his counsel involved and what, if any, threats were

---

[38] 28 U.S.C. § 2254(e)(2).

[39] *Schell*, 218 F.3d at 1027-28 (evidentiary hearing held to determine whether conflict between counsel and defendant was serious enough to amount to a constructive denial of counsel, at which point no further showing of prejudice is required. "If the serious conflict did not rise to the level of a constructive denial of counsel, however, Schell would have to prove he was prejudiced by the conflict.").

[40] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

made.[41] This Court planned to review the affidavit and, if necessary, set an evidentiary hearing on the matter. However, Dixon did not submit an affidavit in accordance with this Court's order. Accordingly, Dixon has not developed a factual record that would justify an evidentiary hearing or entitle him to relief.

## CONCLUSION AND ORDER

Dixon is not entitled to relief under any ground raised in the Petition. Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Dixon's motion for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[42]

The Clerk of the Court is to enter judgment accordingly.

Dated: March 24, 2011.

/s/ James K. Singleton, Jr.<br>
**JAMES K. SINGLETON, JR.**<br>
United States District Judge

---

[41] The docket indicates that the order was served on Dixon on October 27, 2010 ("SERVICE BY MAIL: 36 Order, served on Clarence Henry Dixon. (Matson, R) (Entered: 10/27/2010)").

[42] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.